1  BENJAMIN B. WAGNER
   United States Attorney
2  JEFFREY A. SPIVAK
   Assistant U. S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700

5  Attorneys for Plaintiff
   United States of America

6

**FILED**

**DEC 15 2014**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

7              IN THE UNITED STATES DISTRICT COURT

8                 EASTERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,          1:14cv 1985 AWI SKO

11                     Plaintiff,      ORDER REGARDING CLERK'S
                                       ISSUANCE OF WARRANT FOR ARREST
12              v.                     OF ARTICLES *IN REM*

13  APPROXIMATELY $44,000.00 IN U.S.
    CURRENCY,
14
                       Defendant
15

16

17      WHEREAS, a Verified Complaint for Forfeiture *In Rem* has been filed on December

18  12, 2014, in the United States District Court for the Eastern District of California,

19  alleging that defendant approximately $44,000.00 in U.S. currency (hereafter "Defendant

20  Currency") is subject to forfeiture to the United States pursuant to 21 U.S.C. §§ 881(a)(6),

21  for one or more violations of 21 U.S.C. § 841 *et seq.*;

22      And, the Court being satisfied that, based on the Verified Complaint for Forfeiture *In*

23  *Rem* and the attached (SWs) affidavit of Drug Enforcement Special Agent Thomas Miles, there is probable

24  cause to believe that the Defendant Currency so described constitutes property that is

25  subject to forfeiture for such violation(s), and that grounds for the issuance of a Warrant

26

27

28
   Order Regarding Clerk's Issuance of Arrest Warrant of          1
   Articles *In Rem*

for Arrest of Articles *In Rem* exist, pursuant to Rule G(3)(b)(i) of the Supplemental Rules

for Admiralty or Maritime Claims and Asset Forfeiture Actions;

     IT IS HEREBY ORDERED that the Clerk for the United States District Court,

Eastern District of California, shall issue a Warrant for Arrest of Articles *In Rem* for the

Defendant Currency.

Dated: December 12, 2014

SHEILA K. OBERTO
United States Magistrate Judge

### AFFIDAVIT OF THOMAS MILES

I, Thomas Miles, being first duly sworn under oath, depose and say:

1.    I am a Special Agent (SA) of the United States Department of Justice, Drug Enforcement Administration (DEA) and have been so employed since September 2010.  In March of 2011, I was assigned to the DEA Modesto Post of Duty and assigned to the Central Valley California High Intensity Drug Trafficking Area (HIDTA).  In February 2013, I was further assigned to the Merced Multi-Agency Narcotic Task Force (MMNTF) located in Merced County, California.  Prior to my employment with DEA, I was a police officer in Kansas City, Missouri for nine and one-half years.  I attended basic agent training at the Justice Training Center in Quantico, Virginia.  During training, I received more than 600 hours of training in drug use and physiology, methods of manufacture, importation, transportation, distribution, and sales of controlled substances, including marijuana, a Schedule I controlled substance.  This training included instruction in the investigation of Federal drug violations, including, but not limited to 21 U.S.C. §§ 841 and 846.

2.    As a DEA Special Agent ("SA"), I am charged specifically with the enforcement of the Controlled Substances Act and the investigation of Federal drug violations, including but not limited to, Title 21, United States Code (U.S.C.), Sections 841(a)(1) and 846.   I am an investigative or law enforcement officer of the United States within the meaning of Sections 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

Affidavit of Special Agent Thomas Miles                              1

3.     During the course of my employment with the DEA, I have had the opportunity to converse with admitted and known drug traffickers as to their methods, and those of their associates, regarding the manufacture, importation, transportation, distribution and sales of controlled substances, as well as their methods used to conceal, transport, and launder cash and/or other types of drug proceeds. I have become knowledgeable in the methods used by drug traffickers to import, conceal, transport, distribute, manufacture, and sell controlled substances, as well as the methods used to conceal, transport, and launder cash and/or other types of drug proceeds. Through prior investigations and training, I have become familiar with the types and amounts of profits made by drug dealers, and the methods, language, and terms used by persons dealing illegal substances.

4.     This affidavit is made in support of a warrant for arrest of approximately $44,000.00 in U.S. Currency (hereafter "Defendant Currency"). The Defendant Currency constitutes money or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical, all proceeds traceable to such an exchange and/or was used or intended to be used to facilitate one or more violations of 21 U.S.C. § 841 *et seq*. As a result of the foregoing, the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

5.     The facts set forth in this affidavit are known to me as a result of reviewing official reports, documents, and other evidence obtained as a result of the investigation, and through conversations with other agents, officers and detectives who have participated in this investigation and I have determined the following:

Affidavit of Special Agent Thomas Miles          2

6.     On June 20, 2014, at approximately 1:18 p.m. a California Highway Patrol (CHP) officer initiated a traffic stop at SR-99 and Vista Road in Merced, California on a 2004 gray Toyota Sienna for a violation of California Vehicle Code 26708(b)(12) for an improperly mounted GPS device.

7.     Upon approaching the vehicle the officer made contact with the sole occupant of the vehicle, later identified as Fabian Sanchez Martinez (hereafter "Martinez").  The officer requested Martinez' driver's license, the vehicle registration and proof of insurance. The vehicle was revealed to be registered to Joanna R. Cardenas at 12112 Bayport Street, Apt. 1, Garden Grove, California.  As Martinez retrieved his driver's license the officer observed his hand was trembling severely. The officer also observed a single key in the ignition with no other keys on the key ring (a trait the officer knew from his training and experience indicative to narcotic traffickers or couriers). The officer also noticed a white IPhone sitting in the center console of the vehicle.

8.     Martinez stated that he did not have insurance as he had just purchased the vehicle a couple days ago.  Martinez relayed that he knew he had several days to get insurance at which point the officer advised this was incorrect and that it is against the law to drive uninsured.   The officer then asked Martinez what brought him up north from the Los Angeles area and Martinez relayed that he was driving to tow truck companies to buy salvaged cars for his business and provided the officer with a business card.  The business card had "Fast Auto Service" as the name of the business with an address in Corona, California but it did not have a person's name provided. The officer observed that Martinez remained extremely nervous and that his statement about the purpose for his

Affidavit of Special Agent Thomas Miles                    3

1   trip seemed unnatural and rehearsed.

2       9.      The officer asked Martinez to exit the vehicle and meet him (the officer) at

3   the front of his patrol vehicle.  While Martinez walked with the officer to the patrol

4   vehicle, the officer asked Martinez if he had any weapons on his person.  Martinez stopped

5   walking and backed up slightly. When asked again if he had any weapons Martinez stated

6   that he did not.  A consent pat search of Martinez' person revealed two additional cell

7   phones and a bundle of currency folded in half.

8       10.     The officer subsequently issued Martinez a citation for driving uninsured.  As

9   the officer wrote out the citation he observed Martinez put his hands in his front pockets

10  and began to move around excessively.  Martinez began moving slowly away from the

11  officer and the patrol vehicle without an apparent reason or destination.  The officer

12  observed Martinez' behavior was odd and asked Martinez if everything was okay;

13  Martinez related that it was.   The officer then asked Martinez what tow-truck company

14  he was coming from in Modesto. Martinez looked away from the officer, thought briefly,

15  and stated "Jose's Towing." When asked by the officer if Jose's Towing was located in

16  Modesto, Martinez advised that it was, however he was unable to provide an address.

17      11.     After Martinez signed the citation, the officer advised Martinez that he was

18  free to leave. As Martinez began to walk away the officer asked Martinez if he could ask

19  him a few more questions and Martinez consented.  The officer asked Martinez to confirm

20  his previous statement.  Martinez confirmed that he bought and sold cars for a living. The

21  officer then asked Martinez if he had any large amounts of money in the car with him.

22  Martinez stated that he did not have any large amounts of money with the exception of

23

24  Affidavit of Special Agent Thomas Miles                    4

25

26

27

1  the money that was in his pocket. When asked if he had any guns, marijuana, cocaine,
2  heroin, or methamphetamine in his vehicle, Martinez stated that he did not.

3      12.    The officer asked Martinez how much money he had in his pocket and
4  Martinez advised that he had $2,000.00 in his pocket. The officer asked Martinez how
5  many cell phones he had and Martinez advised that he had two; one for business and the
6  other for personal use. When asked about the white IPhone in the center console of the
7  vehicle, Martinez advised that it was just for listening to music. The officer then asked
8  Martinez a second time if there were any large amounts of money in the vehicle.
9  Martinez again denied possessing any money in the vehicle. The officer then asked
10 Martinez for consent to search his vehicle and Martinez agreed and executed a form
11 authorizing consent for the officer to search the vehicle.

12     13.    At this time a second patrol unit arrived at the scene of the vehicle stop to
13 assist with the search of the vehicle. As the initial officer conducted a hand search of the
14 vehicle the second officer stood nearby with Martinez who advised the second officer that
15 he did in fact have additional monies in the vehicle. Martinez relayed that he was
16 reluctant to disclose this to the initial officer as he did not trust the officer. The initial
17 officer again made contact with Martinez who confirmed that there was more money in the
18 vehicle. When asked how much was in the vehicle, Martinez advised there was
19 $40,000.00. When asked where the money was located, Martinez stated that it was
20 located inside the blue travel bag.

21     14.    The officers subsequently located the blue travel bag inside of the vehicle.
22 Inside of the blue travel bag, officers observed numerous pieces of clothing as well as a

23

24 Affidavit of Special Agent Thomas Miles          5

25

26

27

1 | small round black bag with white trim.  The small black bag was approximately 8" in

2 | diameter and noticeably heavy.  Upon opening the black bag, the officers observed a white

3 | plastic grocery bag in the shape of a rectangular brick.  Inside of the grocery bag, officers

4 | located a large amount of U.S. currency.  When asked again how much money it was,

5 | Martinez stated that it was $43,000, $44,000, or $45,000.00.   When asked yet again how

6 | much it was, Martinez stated that it was $44,000.  A picture of the currency is below:



15.      Shortly thereafter, a canine unit arrived at the location of the vehicle stop in

order to conduct a controlled sniff search on the currency located.  Officers utilized

Affidavit of Special Agent Thomas Miles                 6

1    narcotic detecting canine Aaron to conduct the search. Aaron, a three year old Belgian
2    Malinois/ German Shepard cross, is a dual purpose canine certified in narcotics detection
3    and patrol. Aaron received in excess of 200 hours of training and was certified in narcotics
4    detection to detect cocaine, heroin, marijuana and methamphetamine. Aaron in trained to
5    locate these narcotics in vehicles, buildings and during area searches. Aaron participates
6    in approximately eight hours of training per week with his handler, and eight hours of
7    division training per month.

8        16.      Upon arrival of the canine unit, Aaron was utilized to perform a sweep of an
9    area away from the vehicle in which he did not alert to the odor of illegal narcotics. The
10   officer's then removed the Defendant Currency from the blue travel bag and placed it in
11   the pre-swept area. Aaron was introduced to the area and gave a positive alert for the
12   odor of illegal narcotics on the Defendant Currency.

13       17.      During the continued hand search of the vehicle, officers noticed heavily
14   tooled seat bolts on the right front passenger seat and noticed the bolts were only hand
15   tight. An officer removed the seat bolts and observed a sheet metal door to an aftermarket
16   hidden compartment under the seat.

17       18.      The compartment consisted of a sealed floor compartment underneath the
18   vehicle. A false floor had been lowered approximately five inches. The compartment ran
19   from the firewall to the front of the second row seats and on the sides from the
20   transmission tunnel to the running boards on the passenger side of the vehicle. The
21   compartment was constructed of sheet metal and lined with a sound deadener which had a
22   reflective silver coating on the top.  Below is a picture of the compartment:

23

24   Affidavit of Special Agent Thomas Miles              7

25

26

27



19.     Aaron was utilized to conduct a sniff search of the interior of the vehicle and made a positive alert for the odor of narcotics at the opening of the hidden compartment.

20.     The currency was later confirmed to total approximately $44,000.00 and was seized for forfeiture proceedings.

21.     According to the California Employment Development Department, Martinez does not have any reported wages in California in the past 12 months.

22.     Based on my training and experience narcotic traffickers often possess large amounts of currency, typically bundled and secured with rubberbands and wrapped in some form of plastic.  The Defendant Currency was found wrapped in a plastic grocery bag, bundled and secured with rubberbands, indicative of narcotic trafficking.

23.     Based on the foregoing, I have probable cause to believe that the Defendant Currency is proceeds from drug trafficking.  Additionally, "[T]he filing of the forfeiture complaint allows the government immediately to obtain a warrant for the arrest of the res, without any further showing of probable cause. Indeed, arrest of the res is a jurisdictional

Affidavit of Special Agent Thomas Miles                    8

1  requirement." <u>United States v. $191,910.00 in United States Currency</u>, 16 F.3d 1051 (9th

2  Cir. 1994).  It is respectfully requested that a Warrant for Arrest of Articles *In Rem*,

3  pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset

4  Forfeiture Actions Rule G(3)(b)(i), be issued for the Defendant Currency.

5

6  THOMAS MILES
   Special Agent
7  Drug Enforcement Administration

8

9  Sworn to and Subscribed before me this **12** day of December 2014.

10

11

12  HON. SHEILA K. OBERTO
   United States Magistrate Judge
13

14

15  Reviewed and approved as to form

16

17  JEFFREY A. SPIVAK
   Assistant U.S. Attorney
18

19

20

21

22

23

24  Affidavit of Special Agent Thomas Miles                    9

25

26

27